**ATTACHMENT ONE**

Question 9(f) Grounds raised:

I.   ABUSE OF JUDICIAL DISCRETION BY USING UNSUPPORTED THEORY OF "MOTIVE AND INTENT" TO ADMIT EVIDENCE OF DNA ON UNDERWEAR THAT WAS UNAUTHENTICATED AND ALLOWED JURY TO HEARING IRRELEVANT, HIGHLY PREJUDICIAL, CONFUSING TESTIMONY THROUGHOUT THE TRIAL
   a. The Commonwealth's opening and closing statement included facts not in evidence, and further, additionally prejudiced Mr. Libby by promoting the theory that DNA proved the "motive and intent" of Mr. Libby.
II.  JUDGE ABUSED HIS DISCRETION BY ADMITING AS EVIDENCE A PAIR OF UNDERWEAR THAT NO WITNESS AUTHENTICATED AS THE UNDERWEAR WORN BY K.C. OR AS THE UNDERWEAR PROVIDED TO THE AUTHORITIES ON JUNE 28, 2012
III. EVEN UNDER THE LATIMORE STATDARD, THE JURY HAD INSUFFICIENT EVIDENCE THAT MR. LIBBY PENETRATED EITHER K.C.'S "GENITAL OR ANAL OPENING' AS REQUIRED BY STATUTE TO PROVE FORCIBLE RAPE AND THE JUDGE SHOULD HAVE GRANTED THE DEFENSE'S MOTIONS FOR REQUIRED FINDING OF NOT GUILTY
IV.  THE COURT COMMITTED A CONSTITUTIONAL STRUCTURAL ERROR BY FAILING TO GRANT DEFENDANT'S JULY 18, 2916 MOTION TO DISMISS UNDER RULE 36 IF THIS COURT AGREES WITH THE TRIAL COURT'S PRIOR RULING, DEFENDANT RENEWS THE CLAIM BECAUSE THE DEFENDANT WAS FURTHER PREJUDICED BY AN ADDITIONAL 182 DAY DELAY.

Question 9 (g)(6) Grounds raised:

1. Whether the Appeals Court erred when it ruled that the judge did not abuse his discretion when he admitted DNA evidence under the theory that its presence proved the defendant's "motive and intent" and "sexual attraction" to K.C.

2. Whether the Appeals Court erred when it ruled that the jury "could [have] reasonably conclude[d] that an item evidence was what the Commonwealth claimed it to be when the chain of custody was irreparably broken.

3. Whether the Appeals Court abused its discretion by failing to find that the four years it took the Commonwealth to bring Mr. Libby to trial was presumptively prejudicial and violative to Rule 36.

**ATTACHMENT TWO**

Points and Authority

Question 12, GROUND ONE:

The Appeals court erred when it ruled that the judge did not abuse his discretion when he admitted evidence under the theoty that it proved the defendant's "Motive and Intent" and "Sexual Attraction to the Victim".

(a)

Although victim told the police and jury that Petitioner used only his fingers "in her private parts" and answered "no" when asked if she saw or touched his "private parts," the Commonwealth case focused almost soely on the sperm found in a pair of underwear allegedly owned and worn by victim DNA evidence, identified as the Petitioner's semen, was obtained from a pair of girl's underwear.

(P&A)

Where a Petitioner does not site United States Supreme Court precedent for exhaustion, (as in some of the arguments in this matter), but rather cites State Court authority that either cites the appropriate Supreme Court authority or identifies the State equivelant of Supreme Court doctrine, the State Court authorities have "constitutional trappings" sufficient to meet any exhaustion requirement. See, Scarpa v. Dubois, 38 F.3d 1, 7 n.3 (1st Cir. 1994); Nadworny v. Fair, 872 F.2d 1093, 1101 (1st Cir. (1989); Davis v. Lehene, 89 F.Supp.2d 142, 153 (D. Mass. 2000); Graham v. Maloney, 121 Fed.Appx. 400, 404 (1st Cir. (2005)(unpublished)("that the brief cited only Massachusetts precedent to support his claim ... is not fatal to ... establish exhaustion.").

Question 12, GROUND TWO:

The Appeals Court erred when it ruled that the jury "could [have] reasonably conclued" that that an item of evidence "was what the Commonwealth claimed it was" when the chain of custody had been clearly broken.

(a)

The Appeals Court clearly failed to recognize the significance of the fact that two conflicting stories — testified to by the victim's mother who may well have had a motive to lie. ...

Question 12, GROUND THREE:

The Appeals Court abuse its discretion by failing to find that the four years it took the Commonwealth to bring Petitioner to trial reversible error under the United States Constitution.

-1-

(a)

Petitioner was arraigned on august 22, 2012, and filed his Motion to Dismiss for a Rule 36 Violation on July 14, 2016 at which time his case had been pending for 1,423 days. His right to a speedy trial was violated.

NOTICE: Summary decisions issued by the Appeals Court pursuant to its rule 1:28, as amended by 73 Mass. App. Ct. 1001 (2009), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

18-P-346

COMMONWEALTH

vs.

JEREMY LIBBY.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

After a jury trial, the defendant, Jeremy Libby, was found guilty of four counts of forcible rape of a child in violation of G. L. c. 265, § 22A. This appeal centers on the admission of DNA testing results of a pair of underwear that showed the presence of the defendant's sperm cells.[1] We affirm.

1. Admission of the underwear and the DNA test results. The defendant argues that the Commonwealth failed to authenticate Exhibit 2 as the underwear belonging to the victim, that the evidence of the defendant's sperm cells being found on the underwear was irrelevant and improperly admitted, and that even if relevant, the DNA evidence was more prejudicial than

---

[1] In his reply brief, the defendant retracted the argument in his principal brief regarding the sufficiency of the evidence. Counsel confirmed at oral argument that this argument was withdrawn.

probative.  The trial judge's decisions to admit evidence as relevant or properly authenticated, and whether the evidence is unduly prejudicial, are matters within the judge's discretion and are reviewed for abuse of discretion.  See Commonwealth v. Gray, 463 Mass. 731, 751-752 (2012); Commonwealth v. Bonds, 445 Mass. 821, 831 (2006); Commonwealth v. Meola, 95 Mass. App. Ct. 303, 307-308 (2019); Mass. G. Evid. §§ 401, 403, 901(a) (2019).

    a.  Authenticity.  The judge's role in admitting the underwear was to make a preliminary determination, without weighing credibility, whether the jury could find by a preponderance of the evidence that the underwear belonged to the victim.  See Meola, 95 Mass. App. Ct. at 307-308 & n.13; Mass. G. Evid. § 104(b) (2019).  The victim's mother took the victim to the emergency room after the victim disclosed the sexual assault on June 27, 2012.  The mother testified that the victim's belongings, including "[t]he outfit she was wearing" and "the underwear she was wearing" when she went to the emergency room were "bagged" and "tagged" and then taken by the Palmer police.  The mother was told to take the victim to see Dr. Stephen Boos the next day.  Although the mother testified that she did not personally transport the victim's belongings to Boos, the parties stipulated that "the underwear contained in the evidence collection kit numbered 001126, Item Number 1-1-07 . . . was received by Dr. Stephen Boos at Baystate hospital from

[the mother] on June 28, 2012." The jury could reasonably conclude that the item was what the Commonwealth claimed it to be -- the underwear that the victim was wearing on June 27 -- and the judge's preliminary determination to admit the underwear in evidence was not "palpable error." See id. at 309, quoting Commonwealth v. Leonard, 428 Mass. 782, 786 (1999).[2]

Nor did the judge err in responding to the jury's question whether, "according to law, [with respect to] the evidence obtained in the ER, may the rape kit be sealed by healthcare practitioners in the ER and not be able to be opened until the crime lab?" The judge firmly instructed the jury "that the evidence in this case is closed. You have all the evidence before you. You are to determine this case based on that evidence and based on all of my instructions on the law." Defense counsel had asked the judge to instruct the jury not to engage in speculation; the instruction the judge gave conveyed the same message in different words. In her closing argument, defense counsel suggested that the mother had planted the defendant's semen on the victim's underwear. The judge's response did not foreclose the jury from considering this theory -- ironically, any instruction not to engage in speculation

---

[2] Any claim concerning the chain of custody went to the weight and not the admissibility of the evidence. See Commonwealth v. Mack, 482 Mass. 311, 318-319 & n.9 (2019).

3

might have done so. The judge's response was well within his broad discretion. See Commonwealth v. Monteagudo, 427 Mass. 484, 488 (1998).

    b. _Presence of sperm cells_. The defendant argues that the evidence indicating that his sperm cells were present in the crotch area of the victim's underwear was not relevant because the Commonwealth did not present evidence as to how the defendant's sperm got there. The judge determined that the evidence was "strikingly probative" of the defendant's motive, intent, and relationship with the victim. When the evidence of the DNA match was introduced, and again in his final charge, the judge gave limiting instructions stating that the jurors could not consider that evidence "as a substitute for proof that the defendant committed the crimes charged," nor as proof of a "criminal personality or bad character," but solely on the issues of "motive and/or intent."[3]

    The jury could reasonably infer that the presence of the defendant's sperm in the crotch of the victim's underwear was strong evidence that the defendant's relationship with the victim involved his own sexual gratification. This evidence was relevant to prove that the defendant's digital penetration of

---

[3] At defense counsel's request, the judge did not say that the jurors could consider the evidence as probative of "opportunity."

4

the victim was intentional.[4] Unlike Commonwealth v. McDonagh, 480 Mass. 131, 140 (2018), this evidence did not merely show a general propensity for sexual attraction toward children, but rather gave rise to a reasonable inference that the defendant had a specific sexualized interest in the victim herself, on the same day when two of the charged sexual assaults occurred. See Commonwealth v. Bradshaw, 86 Mass. App. Ct. 74, 78-79 (2014). The judge did not abuse his discretion in determining that the DNA evidence was relevant, and that, in combination with the limiting instruction, any undue prejudice did not outweigh its probative value. See McDonagh, 480 Mass. at 143-144.

c. Prosecutor's opening statement and closing argument. Prosecutors are entitled to say in their opening statements what they in good faith expect the evidence to show, see Commonwealth v. Qualls, 440 Mass. 576, 586 (2003), and to make closing arguments based on the evidence introduced at trial and the reasonable inferences to be drawn from it, see Commonwealth v. Gerhartsreiter, 82 Mass. App. Ct. 500, 514 (2012). "Argument

---

[4] The defendant elicited evidence that the victim had a kidney ailment that led to chronic urinary tract infections and vaginal itching, and that adults, including the defendant, helped the victim clean herself. Accordingly, the judge, with the defendant's assent, instructed the jury that the Commonwealth had to prove that the defendant's acts were intentional rather than accidental. As the defendant's intent was a live issue in this case, the defendant's reliance on Commonwealth v. Crayton, 470 Mass. 228, 250-252 (2014), is misplaced.

that properly focuses on the evidence, and that 'falls into the category of enthusiastic rhetoric, strong advocacy, and excusable hyperbole, . . . is not grounds for reversal'" (quotation omitted). Id., quoting Commonwealth v. Silva, 455 Mass. 503, 515 (2009).

All of the prosecutor's challenged statements and arguments were grounded in the evidence. In discussing the DNA evidence in particular, the prosecutor exercised commendable restraint. He permissibly "suggest[ed]" to the jury "that it is an eminent reasonable inference that that semen ended up on those underpants because [the defendant] had a sexual attraction to [the victim]." He did not dwell on this evidence, but instead explained to the jurors that it did not directly prove any element of the crimes with which the defendant was charged, that it was relevant only to the defendant's motive and intent, and that the most important evidence was the victim's testimony.

2. Speedy trial. The defendant's trial was held in January 2017, approximately four and one-half years after his arraignment in August 2012. Much of this time was attributable to the defendant's motion to suppress, which the Commonwealth appealed and the Supreme Judicial Court (SJC) affirmed in part, reversed in part, and remanded. See Commonwealth v. Libby, 472 Mass. 37 (2015). On July 18, 2016, the defendant filed a motion to dismiss under Mass. R. Crim. P. 36, as amended, 422 Mass.

1503 (1996), and for violation of his constitutional speedy trial right. The motion judge determined that at least 1,129 of the 1,423 days from arraignment to the filing of the motion were excludable; that is, no more than 294 days of the 365 days on the speedy trial clock had elapsed. On appeal, the defendant contends that the motion judge erred in his rule 36 calculations. He further argues, for the first time on appeal, that the 182 days from the filing of the rule 36 motion to the trial should be included in the calculation.

In reviewing rulings on rule 36 motions, we defer to the motion judge's factual findings based on the judge's personal observations and memory of the proceedings, but make an independent determination of the correctness of the judge's application of the relevant legal principles to the facts. See Commonwealth v. Dirico, 480 Mass. 491, 496 (2018).

In a chart included in his brief, and by reference to his memorandum in support of the rule 36 motion, the defendant disagrees with the judge's decisions to exclude certain periods. Passing upon whether this qualifies as proper appellate argument,[5] upon careful consideration of the record and the

---

[5] See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1629 (2019) (argument section of brief shall contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities and parts of the record on which the appellant relies"); Commonwealth v. Gray, 423 Mass. 293, 296-297 (1996)

7

motion judge's comprehensive memorandum of decision, we discern no error. The judge properly excluded the entire time that the motion to suppress was pending. The motion was complex, and nothing in the record suggests that the defendant objected to the delay. See Commonwealth v. Bourdon, 71 Mass. App. Ct. 420, 428-429 (2008). The judge's findings that the defendant acquiesced to the delay after the issuance of the SJC's decision, and did not object to the delay from February 24 to March 17, 2016, are likewise supported by the record. See Dirico, 480 Mass. at 499; Bourdon, 71 Mass. App. Ct. at 428-429. The judge properly excluded the delay resulting from the medical leave of an essential witness.[6] See Mass. R. Crim. P. 36 (b)(2)(B). Nor did the judge err in denying the constitutional speedy trial claim. The defendant was at liberty awaiting trial, and his defense was not prejudiced by the passage of time; if anything, the passage of time inured to his benefit, allowing him to challenge the victim's recollection and

---

(claims of error unsupported by reasoned argument and citations do not rise to level of appellate advocacy).

[6] The defendant's chart asserts, without citation or record support, that the witness in question never testified at trial; however, the judge found that the "re-testing of certain items for DNA material was necessary so that another chemist could testify as to the results," and that this continuance "was deemed to be in the interests of justice." We have no basis to disagree with the judge's determination.

8

the Commonwealth's efforts to refresh it. See Commonwealth v. Wallace, 472 Mass. 56, 70-72 (2015).

We treat as waived the defendant's claim that the 182 days following the filing of the rule 36 motion consumed the time remaining on the clock, as he never asserted this claim in the trial court. See Commonwealth v. Turner, 37 Mass. App. Ct. 385, 386 n.2 (1994). In any event, we discern no risk of a miscarriage of justice. The rule 36 motion stopped the clock, see Barry v. Commonwealth, 390 Mass. 285, 294 (1983), and the trial began sixty-five days after the motion was decided, still within the time available under rule 36.

Judgments affirmed.

By the Court (Meade, Maldonado & Massing, JJ.[7]),

*Joseph F. Stanton*
Clerk

Entered: December 24, 2019.

---

[7] The panelists are listed in order of seniority.