## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JEREMY LIBBY,

               Petitioner,

       v.

MATTHEW DIVRIS,

               Respondent.

No. 4:21-cv-40013-TSH

## REPORT AND RECOMMENDATION ON
## RESPONDENT'S MOTION TO DISMISS HABEAS PETITION

February 18, 2022

Hennessy, M.J.

On February 3, 2021, pro se Petitioner Jeremy Libby ("Libby") filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in Massachusetts Superior Court. [Dkt. No. 1].  Libby raised three grounds for relief in his habeas petition and asked the Court to grant him discovery and an evidentiary hearing.  [Dkt. No. 1 at 16].  On April 30, 2021, Respondent Matthew Divris ("Respondent")[1] moved to dismiss the petition, which District Judge Timothy S. Hillman referred to this Session on October 20, 2021, for a Report and Recommendation. [Dkt. Nos. 8 at 1; 12]; see also Rules Governing Section 2254 Cases in the United States District Courts, Rule 10 ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636.") [hereinafter "Section 2254 Rules"].[2]

---

[1] While Libby's filings do not identify the title of Respondent Matthew Divris, based on filings in other actions, Matthew Divris has been identified as the Superintendent at North Central Correctional Institution ("NCCI") Gardner, where Libby is confined.  See, e.g., MOTION to Appoint Counsel, Menjivar v. Divris, No. 4:21-cv-40123-TSH (D. Mass. Dec. 2, 2021), ECF No. 1

[2] Habeas petitions pursuant to § 2254 are governed by a "discrete set of procedural rules."  See Donald v. Spencer, 656 F.3d 14, 15 (1st Cir. 2011) (quoting Teti v. Bender, 507 F.3d 50, 60 (1st Cir. 2007)).

For the reasons stated below, the undersigned recommends that Respondent's motion to dismiss be DENIED subject to the condition that Libby voluntarily withdraw Grounds One and Two of his petition, and that, should Libby fail to do so, the Court dismiss the petition in its entirety without prejudice.  The undersigned further recommends that Libby's requests for discovery and an evidentiary hearing be DENIED.

## I.    BACKGROUND

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); see also Gomes v. Silva, 958 F.3d 12, 16 (1st Cir. 2020) ("[W]hen we consider a state conviction on habeas review, we presume the state court's factual findings to be correct." (alterations in original) (quoting Dorisca v. Marchilli, 941 F.3d 12, 14 (1st Cir. 2019))).  If the Massachusetts Supreme Judicial Court ("SJC") denies an Application for Leave to Obtain Further Appellate Review ("ALOFAR"), as in Libby's case,[3] the federal court can rely on "the facts as presented by the Massachusetts Appeals Court which affirmed [the] conviction, supplemented with other record facts consistent with the state court's findings."[4]  Logan v. Gelb, 790 F.3d 65, 68, 69 (1st Cir. 2015) (per curiam) (citations omitted); see also Crichlow v. Silva, No. 19-10449-DJC, 2021 WL 5111856, at *1–2 (D. Mass.

---

[3] See Commonwealth v. Libby, 484 Mass. 1106 (2020) (unpublished).

[4] The Appeals Court issued an unpublished "summary decision" in Libby's appeal, which is "primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale." Commonwealth v. Libby, 18-P-346, 2019 WL 7168804 (Mass. App. Ct. Dec. 24, 2019) (unpublished).  The Court therefore utilizes the Parties' filings to supplement its understanding of the facts.  Libby filed two attachments with his petition—Attachment One recites the grounds for Libby's appeal and ALOFAR, and Attachment Two recites the grounds for Libby's habeas petition.  [See Dkt. No. 1-1 at 1–3; see also Dkt. No. 1 at 3 Question 9(f), and at 6 Question 12].  Respondent attached four exhibits to his motion to dismiss.  Exhibits A, B and C are the state court dockets from Libby's prosecution and ensuing appeals.  [See Dkt. Nos. 8-1, 8-2 and 8-3].  Exhibit D is a copy of Libby's ALOFAR.  [See Dkt. No. 8-4].

Nov. 3, 2021) (where ALOFAR denied, habeas court drew "factual background . . .from the Massachusetts Appeals Court's decision affirming [petitioner's] conviction.").

### A.  Trial Court Proceedings: Libby's Prosecution and Conviction

Over the summer of 2012, Libby was living with Patricia Rivas ("Rivas"), his former partner, and Rivas's daughter—identified as K.C.—who was six years old.  [Dkt. No. 8-4 at 6]; see also Commonwealth v. Libby, 472 Mass. 37, 38 (2015).[5]  Although K.C. and Libby are not biologically related, they had a father-daughter relationship.  See Libby, 472 Mass. at 43 n.2. K.C. was born with a "kidney ailment that led to chronic urinary tract infections and vaginal itching," so "adults, including the defendant," would help K.C. "clean herself" anally and vaginally.  Commonwealth v. Libby, 18-P-346, 2019 WL 7168804, at *2 n.5 (Mass. App. Ct. Dec. 24, 2019); [see also Dkt No. 8-4 at 5].  On June 27, 2012, K.C. told Rivas that Libby had "been touching her by using his fingers . . . where no one should be touched," and Rivas "immediately called . . . Police."  [Dkt. No. 8-4 at 6 (citing trial transcript)]; see also Libby, 472 Mass. at 38. Rivas took K.C. to the emergency room, where K.C.'s belongings, "including the outfit she was wearing and the underwear she was wearing" were "bagged and tagged and then taken by the Palmer police."  Libby, 2019 WL 7168804, at *1 (edits omitted); [see also Dkt. No. 8-4 at 8–9 (citing trial transcript)].  The following day, June 28, 2012, police conducted "a forensic interview of K.C., during which she alleged that the defendant had sexually abused her."  Libby, 472 Mass. at 38.  During an interview with police, Libby made "inculpatory statements and admitted that the previous day, while he was tickling K.C., she had moved his hand to her inner thigh near her

---

[5] Early in the travel of this prosecution, Libby moved to suppress certain statements he made during an interrogation with a Palmer Police sergeant.  See Commonwealth v. Libby, 472 Mass. 37, 38–40 (2015); [see also Dkt. No. 8-1 at 6 (Ref. Nbr. 10)].  The Superior Court granted Libby's motion.  See id. [see also Dkt. No. 8-1 at 7 (Ref. Nbr. 23)]. The Commonwealth "filed a motion to stay proceedings in the trial court, with a notice of interlocutory appeal."  Id. at 40; [see also Dkt. No. 8-1 at 7 (Ref. Nbrs. 24 and 25)].  On June 26, 2015, the SJC affirmed-in-part and reversed-in-part, suppressing some but not all of Libby's statements.  See id. at 55; [see also Dkt. No. 8-1 at 7 (Ref. Nbrs. 27 and 35)].  The SJC's interlocutory opinion provides a helpful summary of some of the initial facts of the case.

private parts." Id. at 39. Libby was indicted on four counts of forcible rape of a child and four counts of indecent assault and battery on a child under the age of fourteen. See id.; [see also Dkt. Nos. 8-1 at 5; 8-4 at 2]. Libby pleaded not guilty to those charges on August 22, 2012, and was released on his personal recognizance. [See Dkt. Nos. 8-4 at 2 (citing trial court record appendix); 8-1 at 5–6].

Following more than four years of motion practice, interlocutory appeal, and continuances, Libby's case was tried in January 2017. [See Dkt. No. 8-4 at 2–4, 17; see also Libby, 2019 WL 7168804, at *2. About six months before trial, Libby filed a "Motion to Dismiss for Violation of his Right to a Speedy Trial," arguing that pretrial delay infringed Mass. R. Crim. P. 36[6] and his federal speedy trial right. [Dkt. Nos. 8-1 at 9 (Ref. Nbr. 45), 8-4 at 4]; see also Libby, 2019 WL 7168804, at *2. The Superior Court denied Libby's motion to dismiss on October 31, 2016. [See Dkt. Nos. 8-1 at 9 (Ref. Nbr. 48); 8-4 at 4].

On January 3, 2017, the day before his trial, Libby moved in limine to exclude two items of evidence: K.C.'s underwear,[7] and "DNA testing results of [that] pair of underwear that showed the presence of the defendant's sperm cells."[8] Libby, 2019 WL 7168804, at *1; [see also Dkt. Nos. 8-1 at 10 (Ref. Nbr. 50); 8-4 at 3–4 (citing trial transcript)]. Libby argued that "a host of chain of custody issues" tainted admissibility of K.C.'s underwear, and that the DNA "would be

---

[6] "Rule 36 of the Massachusetts Rules of Criminal Procedure . . . provides that, if a criminal defendant is not tried within twelve months after arraignment, he shall be entitled upon motion to a dismissal of the charges. . . . A defendant may establish a prima facie violation of rule 36 by demonstrating that more than twelve months have elapsed between arraignment and trial." Commonwealth v. Graham, 480 Mass. 516, 517 (2018) (quotations and citations omitted).

[7] Libby's motion in limine was labeled on the Superior Court docket as "Defendant's Motion in limine to exclude certain DNA evidence," with no reference to K.C.'s underwear. [Dkt. No. 8-1 at 10 (Ref. Nbr. 50)]. Libby made clear in his ALOFAR, however, that part of this motion also involved arguments contesting K.C.'s underwear. [See Dkt. No. 8-4 at 3–4].

[8] The Commonwealth took two samples from Libby using cheek swabs. [See Dkt. Nos. 8-1 at 6 (Ref. Nbr. 6) and 8 (Ref. Nbr. 43); 8-4 at 10 (the "supervisor of the criminalistics unit at the Massachusetts State Police Crime Laboratory" testified that she "collected 'a sample from Jeremy Libby' by using a 'foam swab rubbed inside both the cheeks[.]'" (emphasis omitted) (citing trial transcript)].

irrelevant and far more prejudicial than probative" because the "offenses alleged consisted of 'digital touch, possibly penetration'" rather than Libby's genitals.  [Dkt. No. 8-4 at 3–4].  After a hearing, the trial judge denied Libby's motion in limine, admitting both K.C.'s underwear and the DNA evidence.  [Dkt. No. 8-1 at 10].

On January 4, 2017, the Commonwealth <u>nolle</u> <u>prosequied</u> the indecent assault and battery charges, and trial proceeded on the four remaining counts of forcible rape of a child.  [Dkt. Nos. 8-1 at 10 (Ref. Nbr. 51); 8-4 at 4].  Trial "lasted two days and offered four witnesses—K.C., her mother Patricia Rivas, and two DNA analysts."  [Dkt. Nos. 8-4 at 4 (citing trial court record appendix); 8-1 at 10].  During trial, the Commonwealth and Libby stipulated that K.C.'s underwear "was received by [Dr.] Stephen Boos at Baystate Hospital from Patricia Rivas on June 28, 2012," and was "tested by the Massachusetts State Police Crime Laboratory" ("MSP Lab").  [Dkt. No. 8-4 at 9 (citing trial transcript)]; <u>see also</u> <u>Libby</u>, 2019 WL 7168804, at *1.  However, Libby "noted for the record" that by accepting the stipulation he was not waiving his "objection to the underwear and DNA results," and that the stipulation contradicted Rivas's testimony that the Palmer Police bagged K.C.'s clothing.  [Dkt. No. 8-4 at 9–10 (citing trial transcript)].

On January 6, 2017, the jury convicted Libby of four counts of forcible rape of a child. [Dkt. No. 8-1 at 10 (Ref. Nbrs. 54, 55, 56 and 57].  On January 10, 2017, Libby was sentenced to ten to twelve years in state prison on the first three counts, to be served concurrently, as well as ten years of probation with conditions on the fourth count.  [Dkt. No. 8-1 at 11–12].

### B.      Libby's Appeal to the Massachusetts Appeals Court

Libby filed a notice of appeal with the Superior Court on January 19, 2017, which was entered with the Appeals Court on March 12, 2018, raising three relevant arguments.[9]  [Dkt. Nos. 8-1 at 12 (Ref. Nbr. 60); 8-2 at 1].  Libby first argued that the trial judge abused his discretion when he admitted in evidence K.C.'s underwear, which contained sperm apparently tested at the MSP lab.  [See Dkt. No. 1-1 at 1].  Libby reiterated his arguments regarding the chain of custody: that Rivas testified K.C.'s underwear was "bagged" and "tagged" by police, whereas the parties stipulated that "[Rivas] herself had brought K.C.'s clothes to Dr. Stephen Boos."  [Dkt. No. 8-4 at 16]; see also Libby, 2019 WL 7168804, at *1.  Libby added a post-conviction challenge to the underwear, contending that "neither K.C. or [sic] her mother, identified the underpants as belonging to K.C. before the jury."  [Dkt. No. 8-4 at 4, 16]; see also Libby, 2019 WL 7168804, at *1 ("The defendant argues that the Commonwealth failed to authenticate Exhibit 2 as the underwear belonging to the victim").  The Appeals Court found no abuse of discretion in the trial judge's rulings, noting that the "jury could reasonably conclude that the item was what the Commonwealth claimed it to be—the underwear that the victim was wearing on June 27[.]"  Libby, 2019 WL 7168804, at *1.  The Appeals Court further noted that "[a]ny claim concerning the chain of custody went to the weight and not admissibility of the evidence."  Id. at *1 n.3 (citing Commonwealth v. Mack, 482 Mass. 311, 318–19 n.9 (2019)).

Libby next argued that the trial judge abused his discretion when he failed to exclude the DNA samples obtained from K.C.'s underwear because they were irrelevant and prejudicial.  [Dkt.

---

[9] Libby raised four arguments on appeal but dropped one of them—involving objections to the "[p]rosecutor's opening statement and closing argument"—from his ALOFAR and did not resurrect it in his habeas petition.  [See Dkt. No. 1-1 at 1–3]; Libby, 2019 WL 7168804, at *2.  Libby's dropped argument is thus not part of his habeas petition, and the Court cannot consider it.  See Gonsalves v. Thompson, 396 F. Supp. 2d 36, 40 (D. Mass. 2005) (A petitioner could not "raise an issue before the Appeals Court, abandon it in his ALOFAR, and then raise it again in his habeas petition" because "to survive . . . an issue must be raised 'within the four corners of the ALOFAR.'" (quoting Mele v. Fitchburg Dist. Court, 850 F.2d 817, 823 (1st Cir. 1988))).

No. 1-1 at 1].  According to the Appeals Court, the trial judge denied Libby's motion in limine because he "determined that the [DNA] evidence was 'strikingly probative' of the defendant's motive, intent, and relationship with the victim."  Libby, 2019 WL 7168804, at *2.  The Appeals Court held that this was not an abuse of discretion, and that the "jury could reasonably infer that the presence of the defendant's sperm in the crotch of the victim's underwear was strong evidence that the defendant's relationship with the victim involved his own sexual gratification."[10]  Id.  The Appeals Court also affirmed the trial judge's holding that the DNA evidence was not prejudicial, noting that the trial judge twice instructed the jury to consider the DNA evidence "solely on the issues of motive and/or intent."  Id. (quotation marks omitted).  These instructions, the Appeals Court held, ensured that "undue prejudice did not outweigh [the evidence's] probative value."  Id. (citing Commonwealth v. McDonagh, 480 Mass. 131, 140, 143–44 (2018)).

Libby finally argued that the trial judge "committed a constitutional structural error" by denying his motion to dismiss for violation of his right to a speedy trial.  [Dkt. No. 1-1 at 1]; see also Libby, 2019 WL 7168804, at *3.  On this issue, the Appeals Court "defer[red] to the motion judge's factual findings . . . but ma[d]e an independent determination of the correctness of the judge's application of the relevant legal principles to the facts."  Libby, 2019 WL 7168804, at *3 (citing Commonwealth v. Dirico, 480 Mass. 491, 496 (2018)).  The trial judge "determined that at least 1,129 of the 1,423 days from arraignment to the filing of the motion [to dismiss] were excludable; that is, no more than 294 days of the 365 days on the speedy trial clock had elapsed." Id.  Libby challenged those calculations, but the Appeals Court "discern[ed] no error," holding that the trial judge properly "excluded the entire time that [Libby's] motion to suppress was

---

[10] The Appeals Court noted that Libby had elicited evidence that he and others helped K.C. clean herself and address vaginal itching and other manifestations of her kidney ailment.  See Libby, 2019 WL 7168804, at *2 n.5. Accordingly, the trial judge had instructed the jury that the Commonwealth had to prove Libby's conduct was intentional rather than accidental.  Id.  Thus, the Appeal Court found Libby's intent was squarely at issue.  Id.

pending" as well as "the delay resulting from the medical leave of an essential witness." Id.  The Appeals Court also briefly addressed Libby's constitutional claims, finding that the trial judge did not "err in denying [Libby's] constitutional speedy trial claim" because Libby was released on his own recognizance until trial and "his defense was not prejudiced by the passage of time[.]"  Id. "[I]f anything," the Appeals Court concluded, "the passage of time inured to [Libby's] benefit, allowing him to challenge the victim's recollection and the Commonwealth's efforts to refresh it." Id. (citing Commonwealth v. Wallace, 472 Mass. 56, 70–72 (2015)).

Finding no abuse of discretion or error by the trial judge, the Appeals Court affirmed the judgment of the Superior Court in its summary decision entered December 24, 2019. Id. at *4.

### C.  Libby's Application for Further Appellate Review to the Supreme Judicial Court

Libby filed a "MOTION to file FAR application" with the SJC on January 13, 2020, and then filed his ALOFAR on February 28, 2020.  [Dkt. No. 8-3 at 1].  In his ALOFAR, Libby reiterated the three arguments made before the Appeals Court, essentially contending that the Appeals Court came to the wrong conclusions on all three issues.  [See Dkt. No. 8-4].  Thus, Libby argued that the Appeals Court erred when it held that the trial judge did not abuse his discretion in admitting DNA evidence for Libby's "motive and intent" and "sexual attraction" to K.C.  [Id. at 12].  Libby stressed that "K.C.—the only percipient witness—claimed she never saw or touched [his] penis" and that "[n]o one, including the forensic analysts, could say when or how the DNA found itself on K.C.'s underwear[.]"  [Id. at 15].  Libby also contended again that the DNA evidence was "irrelevant" because the charges "involved digital penetration only," and was "far more prejudicial than probative."  [Id. at 13 (citing trial transcript)].  Libby next argued that the Appeals Court erred by finding that the jury could have reasonably concluded that the underwear belonged to K.C. "when the chain of custody was irreparably broken."  [Id. at 5].  Libby repeated

his contention that the underwear was never authenticated because Rivas provided "two conflicting stories" and that no one "identified" the underwear "before the jury." [Id. at 16]. This error, Libby maintained, was especially significant since the "only substantive question the jury sent to the judge was about the underwear[.]" [Id. at 17].

Libby's third argument was that the more than four years it took to bring Libby to trial violated Mass. R. Crim. P. 36 and his "right to a speedy trial under the 6th and 14th Amendments to the U.S. Constitution[.]"[11] [Id. at 18]. Libby cited Mass. R. Crim. P. 36 as "govern[ing] the speedy trial clock in the Commonwealth," and argued that the Appeals Court erred in holding that the trial judge did not abuse his discretion in denying Libby's motion to dismiss because "the Commonwealth still bears the burden of showing that 1,058 days were the result of excusable delay[.]"[12] [Id. at 18]. As support for the contention that the Commonwealth infringed on his Sixth Amendment right to a speedy trial, Libby cited Supreme Court precedent and averred that the "Appeals Court utterly skirted [the] constitutional speedy trial claim, simply postulating that the time 'inured to his benefit' because he could then 'challenge the victim's recollection.'" [Id. at 18–19]. Libby "concede[d] that he was not incarcerated pre-trial," but maintained that "one cannot underestimate the anxiety and concern he experienced" as a result of the prosecution, such as "GPS monitoring," being "prevented from seeing his son," and having "difficulty obtaining and maintaining employment." [Id. at 19]. The SJC denied the ALOFAR on May 15, 2020.

---

[11] Libby also averred that the Commonwealth's delay in bringing him to trial violated "art. 11 of the MA Declaration of Rights," but this is the only time Libby mentioned this claim—in his ALOFAR or in any other filing. [See Dkt. No. 8-4 at 18]. This claim is not before the Court.
[12] Libby does not explain how he counts "1,058 days" in his ALOFAR.

D.    **Libby's Habeas Petition, Respondent's
      Motion to Dismiss and Libby's Opposition**

Libby's habeas petition advances the arguments he made before the Appeals Court and in

his ALOFAR, though expressed in slightly different language:

> GROUND ONE: The Appeals court erred when it ruled that the judge did not abuse
> his discretion when he admitted evidence under the theo[r]y that it proved the
> defendant's "Motive and Intent" and "Sexual Attraction to the Victim". . . .
>
> GROUND TWO: The Appeals Court erred when it ruled that the jury "could [have]
> reasonably conclu[d]ed" that that an item of evidence "was what the
> Commonwealth claimed it was" when the chain of custody had been clearly
> broken. . . .
>
> GROUND THREE: The Appeals Court abuse[d] its discretion by failing to find
> that the four years it took the Commonwealth to bring Petitioner to trial [was]
> reversible error under the United States Constitution.

[Dkt. No. 1-1 at 2–3]. To support Ground One, Libby states that K.C. "told the police and jury"

that he "used only his fingers 'in her private parts,'" and that she "answered 'no' when asked if

she saw or touched his 'private parts'"—yet the Commonwealth "focused almost so[l]ely on the

sperm found in a pair of underwear allegedly owned and worn" by K.C. [Id. at 2]. To support

Ground Two, Libby emphasizes that the Appeals Court "failed to recognize the significance" of

Rivas's conflicting testimony regarding the chain of custody of K.C.'s underwear and that Rivas

"may well have had a motive to lie." [Id. at 2]. For Ground Three, Libby repeats that 1,423 days

elapsed between his arraignment and trial. [Id. at 3]. Libby also asks in his petition that the Court

grant him "Discovery, and an evidentiary hearing[.]" [Dkt. No. 1 at 16].

In moving to dismiss the petition, Respondent addresses Libby's Grounds One and Two—

those involving challenges to the Superior Court's rulings admitting in evidence Libby's DNA

match and K.C.'s underwear. [Dkt. No. 9 at 5–9]. Respondent contends that those Grounds are

"not cognizable" because they "solely concern an issue of state law" [Id. at 1] and that, even if

those grounds are cognizable, they were "not properly exhausted" in Massachusetts courts.  [Id. at 4–5].  Building on the assertion that Libby's petition includes unexhausted claims, Respondent urges the Court to "dismiss the petition in its entirety" or, alternatively, permit Libby to "voluntarily dismiss the unexhausted claims[.]"  [Id. at 13].  Respondent does not address Ground Three.  Lastly, Respondent contends that because Libby's habeas claims are, at a minimum, unexhausted, his request for discovery and an evidentiary hearing must be denied.  [Id. at 12].

Libby opposed Respondent's motion on June 1, 2021.  [Dkt. No. 10].  Libby avers that he "did present the federal nature of Ground One to the SJC by means of constitutional trappings." [Id. at 1].  Libby goes on to acknowledge that he did not cite any case law for Ground Two of his petition, and states that he "would have no objections to Ground Two being dismissed."  [Id. at 2]. Libby concludes by noting that he is "willing to go forward with Ground One and Ground Three" of his petition.  [Id. at 2].  He presents no counterarguments to Respondent's opposition to discovery or an evidentiary hearing.

## II.    APPLICABLE LEGAL STANDARDS

"28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), sets the standards by which [federal courts] review collateral attacks of state court convictions."  Logan, 790 F.3d at 69 (citing Scoggins v. Hall, 765 F.3d 53, 57 (1st Cir. 2014)).  "It is a fundamental principle of the law of federal habeas corpus . . . that no habeas claim is stated as to state court criminal convictions unless the alleged errors are violations of the Constitution, laws, or treaties of the United States."  Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) (citing Estelle v. McGuire, 502 U.S. 62, 67–68 (1991)).  "Errors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised."  Id. (citing Estelle, 502 U.S. at 67).  A petitioner's claim that a state court violated state

law, therefore, "is no part of a federal habeas court's review of a state conviction." Id. (citing Estelle, 502 U.S. at 67). Indeed, "if nothing other than questions of compliance with state law [is] at issue, no habeas petition [can] lie." Id. Similarly, the federal court "ordinarily may not second guess a state court's rejection of a claim on the basis of an independent and adequate state procedural rule." Logan, 790 F.3d at 70 (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). That said, there are "no clean and clear dividing lines for the federal courts as to when a state court ruling about state law, on evidentiary or other grounds, may transgress the Constitution." Kater, 459 F.3d at 61.

In addition to asserting a cognizable claim, an applicant for habeas relief must show he "has exhausted the remedies available in the courts of the State" in which he was convicted. 28 U.S.C. § 2254(b)(1)(A); see also Adelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997) ("the exhaustion principle holds, in general, that a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application."). "To achieve exhaustion, 'a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim.'" Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011) (quoting Adelson, 131 F.3d at 262). "In order to carry this burden, the petitioner must show that he tendered his federal claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000) (quoting Adelson, 131 F.3d at 262); see also Facella v. Goguen, 440 F. Supp. 3d 104, 108 (D. Mass. 2020). However, "[f]ailure of a state appellate court to mention a federal claim does not mean the claim was not presented to it." Dye v. Hofbauer, 546 U.S. 1, 3 (2005) (per curiam). Rather, exhaustion requires "that a habeas petitioner present, or do his best to present,

his federal claim to the state's highest tribunal." Adelson, 131 F.3d at 263 (citing United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17 (1925); Mele v. Fitchburg Dist. Ct., 850 F.2d 817, 820 (1st Cir. 1988)). "Accordingly, the decisive pleading is the application for further appellate review," and the federal court is tasked with examining "whether the petitioner fairly presented the federal claim to the SJC within the four corners of that application." Id. (quoting Mele, 850 F.2d at 823). This is true even when the SJC denies further appellate review, particularly if the petitioner's claims, as here, remain consistent on direct appeal and in the ALOFAR. See id. at 261, 263 (reviewing the ALOFAR even though "the Massachusetts Supreme Judicial Court (SJC) denied further appellate review" and noting that "the petitioner argued to the SJC[] as he did to the Massachusetts Appeals Court[.]").

The determination that a claim has been exhausted "relates to probability [and is] reflected not by speculation or surmise, but by trappings . . . such as would in all likelihood alert a reasonable jurist to the existence of the federal question." Nadworny v. Fair, 872 F.2d 1093, 1101 (1st Cir. 1989). A habeas petitioner can satisfy "fair presentation" by "(1) citing a specific provision of the Constitution; (2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a particular right specifically guaranteed by the Constitution." Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987) (citations omitted); see also Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) (quoting Gagne). Additionally, "a petitioner can meet his fair presentation obligation where although the claim arises under and is asserted in terms of state law, 'as a practical matter, [it is] indistinguishable from one arising under federal law.'" Facella, 440 F. Supp. 3d at 108 (quoting Barresi v. Maloney, 296 F.3d 48, 52 (1st Cir. 2002)); see also Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) ("a fifth possibility [for fair presentment],

namely, the assertion of a state law claim that is functionally identical to a federal claim."). That said, "fair presentation" requires more than "simply citing a federal case or two." Nadworny, 872 F.2d at 1101. The core of the exhaustion question remains whether a reasonable jurist would have been alerted to the existence of a federal issue. See id.

Considering the burdens of § 2254, it is no surprise that the First Circuit has stated that habeas relief has "exacting standards," and "prevents federal courts from overturning state court convictions except where the state proceedings suffered from an 'extreme malfunction[].'" Logan, 790 F.3d at 68, 69 n.2 (alteration in original) (citing Harrington v. Richter, 562 U.S. 86, 102–03 (2011)). Indeed, "[t]he standard for evaluating the state court's decision is 'highly deferential,' with 'the presumption that state courts know and follow the law' and the requirement that the decisions of the state court 'be given the benefit of the doubt.'" Simpson v. Spencer, 372 F. Supp. 2d 140, 145 (D. Mass. 2005) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). That said, the First Circuit recognizes the "obstacles that pro se litigants face," noting that "while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Dutil, 550 F.3d at 158 (citations omitted); see also Haines v. Kerner, 404 U.S. 519, 520 (1972).

## III.   DISCUSSION

### A.   Libby's Ground One (Improperly Admitted DNA Evidence) Must Be Dismissed as it was Never Exhausted in State Courts

Libby argues in Ground One of his petition that the "Appeals Court erred when it ruled that the judge did not abuse his discretion when he admitted [DNA] evidence" to show Libby's "Motive and Intent" and "Sexual Attraction to the Victim." [Dkt. No. 1-1 at 2]. Libby contends that admitting the DNA evidence was improper because K.C. "told the police and jury" that he "used

only his fingers 'in her private parts,'" and "answered 'no' when asked if she saw or touched his 'private parts[.]'"  [Id. at 2].  This argument largely tracks Libby's ALOFAR, in which he argued that there was no evidence to demonstrate "how or when the DNA made its way onto the underpants" and that "there were innocent explanations for the presence of semen" in K.C.'s underwear, supposedly casting doubt on allegations of "nefarious" conduct or intent.  [Dkt. No. 8-4 at 12–13].  Libby also maintains that the DNA evidence was far more prejudicial than probative.  [Id. at 14 (citing trial transcript)].  Respondent argues that Libby's Ground One should be dismissed as it is "not cognizable in this habeas action because it solely concerns an issue of state law."  [Dkt. No. 9 at 5].  Alternatively, Respondent contends that "[i]f this Court reads a federal dimension into the petitioner's claim, it must still dismiss it, because no such federal dimension was adequately presented in the state system."  [Id. at 6].  In his opposition, Libby contends that he "did present the federal nature of Ground One to the SJC by means of constitutional trappings."  [Dkt. No. 10 at 1].

The undersigned finds that Respondent is incorrect in his first argument—evidentiary rulings of state courts can present cognizable issues of federal law in limited circumstances.  However, Respondent is correct that Libby's Ground One must be dismissed because its federal dimensions were never fairly presented to the state courts, rendering it unexhausted.

## 1.  State Evidentiary Rulings can be Cognizable in Federal Court

When challenging a state evidentiary ruling in federal court, "the petitioner faces an immediate hurdle, because a claim that a state trial court admitted irrelevant [evidence] generally will not invoke the habeas authority of the federal courts."  Simpson, 372 F. Supp. 2d at 147 (citing Palmariello v. Superintendent of MCI Norfolk, 873 F.2d 491, 494 (1st Cir. 1989) ("Habeas review does not ordinarily encompass garden-variety evidentiary rulings."); Allen v. Snow, 635 F.2d 12,

15 (1st Cir. 1980) ("The writ of habeas corpus ordinarily will not lie solely to correct alleged errors in evidentiary rulings.")).  But this does not foreclose the issue entirely: "[h]abeas relief, based on an evidentiary ruling of a state trial court, is available only where the evidentiary ruling in question has made a fair trial impossible."  Id. (citing Lagasse v. Vestal, 671 F.2d 668, 669 (1st Cir. 1982)). In other words, "a misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, ground federal habeas relief."  Coningford, 640 F.3d at 484 (citing Montana v. Egelhoff, 518 U.S. 37, 43 (1996); Petrillo v. O'Neill, 428 F.3d 41, 44 n.2 (1st Cir. 2005)).  However, "to trigger such relief, the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'"  Id. (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  Respondent makes no argument regarding fair trial or contending that the evidentiary rulings were not arbitrary and capricious.  The undersigned therefore cannot conclude, as Respondent urges, that Libby's Ground One categorically does not pose a cognizable issue of federal law.  Libby's claim that the trial judge erred in admitting DNA evidence, and that the Appeals Court erred in affirming that decision, could present a federal issue if it was so arbitrary and capricious that it rose to the level of denying Libby's due process right to a fair trial.  Cf. Simpson, 372 F. Supp. 2d at 144, 146–150 (petitioner argued before SJC and in his habeas petition that "trial errors," including the admission of "irrelevant and prejudicial evidence," "violated his due process right to a fair trial," and the federal court considered this argument on the merits, asking "whether the ruling of the trial court—as affirmed by the SJC . . . made a fair trial impossible for the petitioner, in violation of his due process rights.").

## 2.  Federal Dimensions of Libby's Ground One were Never Exhausted

Though evidentiary rulings can present questions of federal law on habeas review when such rulings infringe due process, Libby failed to fairly present this constitutional dimension of

his evidentiary challenge in his ALOFAR.  Libby trained his argument purely on state law, citing

only to the Massachusetts rules of evidence and caselaw.  [Dkt. No. 8-4 at 13–15].  Respondent

emphasizes this in his motion to dismiss, contending it is "critical" that Libby's "argument in the

SJC cited no specific constitutional provision, tendered no substantive federal claim, and relied on

no federal constitutional precedent."  [Dkt. No. 9 at 7].  The undersigned agrees that Libby has not

met any of the four <u>Gagne</u> factors: he has not cited a "provision of the Constitution," presented the

"substance of a federal constitutional claim," relied on "federal constitutional precedents," or

claimed "a particular right specifically guaranteed by the Constitution."  835 F.2d at 7.  That does

not end the inquiry, however, because those factors serve only as cairns to the core of the

exhaustion question:

> To reiterate, the crux of the matter relates to probability.  And probability must be
> reflected not by speculation or surmise, but by trappings—specific constitutional
> language, constitutional citation, appropriate federal precedent, substantive
> constitutional analogy, argument with no masking state-law character, and the
> like—such as would in all likelihood alert a reasonable jurist to the existence of the
> federal question.

<u>Nadworny</u>, 872 F.2d at 1101; <u>see also</u> <u>Adelson</u>, 131 F.3d at 262 (quoting <u>Nadworny</u>); <u>LeMay v.</u>

<u>Murphy</u>, 537 F. Supp. 2d 239, 251 (D. Mass. 2008) (quoting <u>Adelson</u>).  In his petition and

opposition to dismissal, Libby relies on this concept of "trappings" and correctly notes that even

though his ALOFAR "cited only Massachusetts precedent to support his claim . . . [this] is not

necessarily fatal to his attempt to establish exhaustion."  <u>Graham v. Maloney</u>, 121 F. App'x 400,

404 (1st Cir. 2005) (per curiam) (unpublished); [<u>see</u> Dkt. Nos. 1-1 at 2; 10 at 1 (quoting <u>Graham</u>)].

In support, Libby examines the four Massachusetts SJC decisions cited in part "I" of his ALOFAR

and argues that they all cite Supreme Court precedent, which is "more than enough constitutional

trappings to satisfy the exhaustion requirements."  [Dkt. No. 10 at 2].  Respondent disputes that

Libby's claims have sufficient "trappings" to render Libby's federal claims exhausted, contending

that the Massachusetts cases Libby cited in his ALOFAR "involved the admissibility of evidence, not federal constitutional rights."  [Dkt. No. 9 at 7–8].

Libby's argument in opposition is plainly lacking—it is well-established that "[t]here is more to a petitioner's burden than simply citing a federal case or two" for purposes of exhaustion. Nadworny, 872 F.2d at 1101.  In other words, the fact that the Massachusetts cases Libby cited in his ALOFAR mention Supreme Court decisions, even if those decisions involve constitutional questions, would not support a finding of exhaustion ipso facto.  However, cognizant of the imperative to treat pro se filings flexibly, see Dutil, 550 F.3d at 158, the undersigned evaluates the "core" of the exhaustion question by examining whether the four Massachusetts SJC decisions in Libby's ALOFAR could have alerted "a reasonable jurist to the existence of the federal question."[13] Nadworny, 872 F.2d at 1101.

Libby first cited Commonwealth v. Sylvia as standing for the proposition that "even if [] evidence is relevant for other purposes, its probative value must not be substantially outweighed by its prejudicial effect."  [Dkt. No. 8-4 at 13 (citing 456 Mass. 182 (2010))].  In his opposition, Libby argues that Sylvia satisfies "constitutional trappings" because the SJC cited to Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).  [Dkt. No. 10 at 2].  Melendez-Diaz involved a constitutional question—when should affidavits be considered "testimonial," which would render the "affiant 'witnesses' subject to the defendant's right of confrontation under the Sixth Amendment."  557 U.S. at 307.  But Libby did not cite Sylvia for this principle.  Indeed, Libby has never argued that his Sixth Amendment confrontation rights were violated.  Thus, the SJC's

---

[13] Respondent engages in this exercise, at least in part, in his motion to dismiss—he briefly cites two of the four SJC decisions Libby cited in his ALOFAR and explains in parentheticals why they did not raise "federal constitutional rights."  [Dkt. No. 9 at 8].

citation in <u>Sylvia</u> to <u>Melendez-Diaz</u> would not have alerted a reasonable jurist to the existence of a federal constitutional issue.

Libby also cited <u>Commonwealth v. Gray</u> to support the notion that "defendant bears the burden of establishing both an abuse of discretion and the resulting prejudice." [Dkt. No. 8-4 at 13 (citing 463 Mass. 731 (2012))].[14]  In his opposition, Libby argues that <u>Gray</u> satisfies "constitutional trappings" by citing <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973).  [Dkt. No. 10 at 2].  This argument fails for two reasons.  First, the SJC in <u>Gray</u> never directly cited to <u>Chambers</u>—rather, that citation appears as a parenthetical appended to a citation to one of the SJC's own prior opinions.  <u>See</u> 463 Mass. at 750.  This puts distance between the federal case and the likelihood it would flag a federal question. Second, <u>Chambers</u> is also of no help substantively as it concerned the constitutionality of Mississippi rules of evidence about a defendant's "rights to confront and cross-examine witnesses and to call witnesses in one's own behalf[.]"  410 U.S. at 284, 289–90, 294.  Hence, <u>Chambers</u> would not alert a reasonable jurist to a federal question in Libby's evidentiary challenge.

Third, Libby cited <u>Commonwealth v. Copney</u> for the proposition that "prior bad acts . . . may only be admitted to show a 'common scheme, pattern of operation, absence of accident or mistake, identity, or motive[.]"  [Dkt. No. 8-4 at 14 (quoting 468 Mass. 405 (2014))]. In his opposition, Libby argues that <u>Copney</u> satisfies "constitutional trappings" by citing two Supreme Court cases: <u>Michigan v. Fisher</u>, 558 U.S. 45 (2009) (per curiam) and <u>Old Chief v. United States</u>, 519 U.S. 172 (1997).  [Dkt. No. 10 at 2].  The Supreme Court's <u>Fisher</u> decision concerned the "emergency aid exception" to the Fourth Amendment's warrant requirements, as noted by the SJC in <u>Copney</u>.  <u>See</u> 558 U.S. at 45–50; 468 Mass. at 410.  This was not an issue in Libby's

---

[14] Libby cited to this case in his ALOFAR and opposition as "464 Mass. 731," which appears to be the incorrect citation.  [<u>See</u> Dkt. Nos. 8-4 at 13; 10 at 2].

prosecution or appeals and is not relevant here.  The Supreme Court's decision in Old Chief, however, appears germane to Libby's claims—the SJC discussed Old Chief in evaluating "prior bad act evidence."  See 468 Mass. at 412 (analyzing 519 U.S. 172).  However, the SJC explicitly noted that Old Chief "did not involve a constitutional principle, but the proper application of Fed. R. Evid. 403" and that it was "'limited to cases involving proof of felon status.'"  Id. at 412, 413 (quoting 519 U.S. at 180, 183 n.7).  Libby's claims involved neither the Federal Rules of Evidence nor felon status.  The SJC's citation to Old Chief, therefore, would not alert a reasonable jurist to a federal constitutional issue implicated by Libby's evidentiary challenge.

Lastly, Libby cited Commonwealth v. Crayton to argue that "even if the evidence is relevant to, say, 'motive' . . . [it] should nonetheless be excluded if its 'probative value is outweighed by the risk of unfair prejudice to the defendant, *even if not substantially outweighed* by that risk.'"  [Dkt. No. 8-4 at 14–15 (emphasis in original) (citing 470 Mass. 228 (2014))].  In his opposition, Libby argues that Crayton satisfies "constitutional trappings" by citing two Supreme Court cases: Manson v. Brathwaite, 432 U.S. 98 (1977) and Perry v. New Hampshire, 565 U.S. 228 (2012).  [Dkt. No. 10 at 2].  Neither of those opinions are substantively related to Libby's claims—they discuss the standards for "admission of eyewitness identification," and the SJC cited them in the context of in-court identifications.  See Crayton, 470 Mass. at 233–46; Manson, 432 U.S. at 99; Perry, 565 U.S. at 232.  Citations to Manson or Perry thus would not alert a reasonable jurist to the existence of a federal constitutional dimension in Libby's Ground One.

In sum, Libby did not cite any federal law in his ALOFAR to support his position that the trial judge improperly admitted the DNA evidence in question.  The state law cases Libby cited do not possess the "trappings" of federal constitutional issues.  The undersigned concludes, therefore, that it is not "probable that a reasonable jurist would have been alerted to the existence of the

federal question" in Libby's Ground One.  <u>Casella</u>, 207 F.3d at 20 (citations omitted).  Ground

One was thus never exhausted as required by § 2254(b)(1), and this Court is barred from reviewing

it.  <u>See</u> <u>Adelson</u>, 131 F.3d at 261 ("a federal court will not entertain an application for habeas relief

unless the petitioner first has fully exhausted his state remedies[.]").

### B.   Libby's Ground Two (K.C.'s Underwear Improperly Admitted) Must Be Dismissed as it was Never Exhausted in State Courts

Libby argues in Ground Two of his petition that the "Appeals Court erred when it ruled

that the jury" could reasonably conclude that K.C.'s underwear was "what the Commonwealth

claimed" it was because the "chain of custody had been clearly broken."  [Dkt. No. 1-1 at 2].  Libby

stresses that the Appeals Court "failed to recognize the significance of the fact" that Rivas offered,

according to Libby, conflicting testimony regarding K.C.'s underwear, and that Rivas "may well

have had a motive to lie."  [<u>Id.</u> at 2].  These are the same arguments Libby presented to the SJC in

his ALOFAR, though in his ALOFAR he included two other points: first, that "no one with

personal knowledge . . . identified the underpants as belonging to K.C. before the jury."  [Dkt. No.

8-4 at 16–17]; second, that "the underwear were central" to the jury's decision, as evidenced by

the fact that "[t]he only substantive question the jury sent to the judge was about the underwear[.]"

[<u>Id.</u>].  Respondent avers that this Court should dismiss Ground Two of Libby's petition for the

same reasons that Ground One should be dismissed—"the petitioner fails to allege a federal

constitutional violation," but "even if this Court were to find a federal nature to petitioner's

[second] claim, the petition should again be denied" because Libby "did not fairly present the

substance of his federal claims to the SJC[.]"  [Dkt. No. 9 at 8–9].  In his opposition, Libby

"acknowledges that there are no case laws [sic] cited with [his] argument" and states that he "would

have no objections to Ground Two being dismissed."  [Dkt. No. 10 at 2].

As with Libby's Ground One, the undersigned rejects Respondent's categorical position on the existence of a cognizable federal issue but agrees with Respondent that Libby never fairly presented any federal dimension of Ground Two to the state courts, rendering it unexhausted and requiring dismissal.

### 1.   State Evidentiary Rulings can be Cognizable in Federal Court

As discussed, an erroneous evidentiary ruling can result in a "fundamentally unfair trial" that infringes due process if that ruling was "so arbitrary and capricious" it "constitute[s] an independent due process" violation.  Coningford, 640 F.3d at 484 (citations omitted).  This remains true when a petitioner argues that evidence was improperly admitted "because problems existed with the chain of custody[.]"  Crichlow, 2021 WL 5111856, at *6 (discussing a petitioner's challenge on habeas to testimony regarding DNA testing due to chain of custody issues, and assessing the claim on exhaustion principles).  Libby's Ground Two thus could entail a cognizable federal issue involving due process.

### 2.   Federal Dimensions of Libby's Ground Two were Never Exhausted

Libby acknowledges that he cited no case law, state or federal, to support Ground Two in his ALOFAR.  [Dkt. No. 10 at 2; see also Dkt. No. 8-4 at 16–17].  Indeed, nothing in Libby's ALOFAR would have alerted a reasonable jurist that Libby was raising a federal constitutional issue regarding the trial court's admitting K.C.'s underwear into evidence.  See Nadworny, 872 F.2d at 1101.  Libby's Ground Two is therefore unexhausted and is outside the bounds of this Court's habeas review.

### C.    Libby's Ground Three (Violation of Speedy Trial Rights) Is Not Subject to Dismissal as it Presents Exhausted Federal Issues

In his petition, Libby argues that the "Appeals Court abuse[d] its discretion by failing to find that the four years it took the Commonwealth to bring Petitioner to trial [was] reversible error

under the United States Constitution."  [Dkt. No. 1-1 at 2].  Libby also raised this argument in his ALOFAR, contending the Appeals Court erred in upholding the trial judge's decision to deny his motion to dismiss because the Commonwealth arguably violated Mass. R. Crim. P. 36 ("Rule 36") and Libby's "right to a speedy trial under the 6th and 14th Amendments to the U.S. Constitution[.]"  [Dkt. No. 8-4 at 17–18].  Respondent does not address Libby's Ground Three in his motion to dismiss.  However, Libby expressed in his opposition that he would be "willing to go forward with Ground One and Ground Three[.]"  [Dkt. No. 10 at 2].  To ignore Ground Three entirely would leave Libby with no guidance as to whether he exhausted his speedy trial claims in the state courts.  It is also this Court's duty to "promptly examine" habeas petitions.  See 28 U.S.C. § 2254(a); Rule 4 of the Section 2254 Rules.  The Court therefore evaluates Libby's Ground Three and concludes that while the Rule 36 claim is not cognizable on habeas review, Libby's Sixth Amendment claim can properly be asserted under AEDPA.  The Court then examines whether Libby exhausted his constitutional claim and finds that he has done so.[15]

### 1. Constitutional Sixth Amendment Claims are Cognizable In Federal Court, but Mass. R. Crim. P. 36 Claims Are Not

Section 2254 permits federal courts to "entertain" habeas corpus petitions only if they are brought on the grounds that petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Thus, "a claim premised on an allegedly

---

[15] Ordinarily, having found a cognizable and exhausted issue of federal constitutional law in a habeas petition, the Court would proceed to assess that issue on the merits pursuant to the standards set by AEDPA.  This would require the Court to not only "weigh the strength of the petitioner's constitutional claim but also . . . [to] consider whether the state court's determination that no constitutional infraction occurred, even if incorrect, was objectively reasonable."  RaShad v. Walsh, 300 F.3d 27, 33 (1st Cir. 2002) (citing Ouber v. Guarino, 293 F.3d 19, 31 (1st Cir. 2002) (reviewing a state habeas petitioner's claim that his constitutional right to a speedy trial was infringed); see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  In his ALOFAR, Libby focused on Mass. R. Crim. P. 36 and only briefly touched on the constitutional issues at play.  Accordingly, Libby should have the opportunity to brief the merits of his constitutional speedy trial claim before this Court evaluates it.

improper ruling under a Massachusetts procedural rule does not, without more, entitle a petitioner to habeas corpus relief." Hobson v. Corsini, 133 F. Supp. 3d 297, 307 (D. Mass. 2015). "Because a Rule 36 violation is a purely state law claim, habeas relief is not available." Id. (citing Martin v. Roden, No. 12-10312-RWZ, 2013 WL 753485, at *1 (D. Mass. Feb. 28, 2013)). Rule 36 is "a rule of case management," which is "primarily designed to assist in the administration of trial court dockets." Commonwealth v. Lauria, 411 Mass. 63, 67–68 (1991). The constitutional right to a speedy trial, by contrast, "is as fundamental as any of the rights secured by the Sixth Amendment" and is "one of the most basic rights preserved by our Constitution." Klopfer v. North Carolina, 386 U.S. 213, 223, 226 (1967). That is to say: even though Libby's arguments concerning Rule 36 are not cognizable in the federal court, his constitutional claims under the Sixth Amendment stand on their own and fall within the parameters of federal habeas review.

### 2. Libby Exhausted His Claim that the Commonwealth Violated his Sixth Amendment Right to a Speedy Trial

There can be little doubt that Libby properly raised his federal speedy trial right before the state courts. To begin, the Appeals Court directly addressed Libby's Sixth Amendment claim, finding that the trial judge did not "err in denying the constitutional speedy trial claim" because Libby "was at liberty awaiting trial, and his defense was not prejudiced by the passage of time[.]" Libby, 2019 WL 7168804, at *3. Libby also raised the constitutional claim in his ALOFAR, pointing to the Sixth and Fourteenth Amendments and citing to Barker v. Wingo, "the seminal Supreme Court case" interpreting the right to a speedy trial. See RaShad v. Walsh, 300 F.3d 27, 33 (1st Cir. 2002) (citing Barker, 407 U.S. 514 (1972)). In his ALOFAR, Libby argued that the Appeals Court's decision upholding the denial of his Sixth Amendment claim was erroneous, and noted that the Appeals Court failed to appreciate the harm he experienced as a result of the prolonged delay between his arraignment and trial. [See Dkt. No. 8-4 at 19]. This satisfies the

<u>Gagne</u> exhaustion factors: a citation to "a specific provision of the Constitution" that "claim[ed] a particular right specifically guaranteed by the Constitution," bolstered by "reliance on federal constitutional precedents," all of which "present[ed] the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature[.]" <u>Gagne</u>, 835 F.2d at 7. In other words—"a reasonable jurist would have been alerted to the existence of the federal question." <u>Casella</u>, 207 F.3d at 20 (quotation omitted).

## IV.   PROPER REMEDY FOR MIXED PETITION

A "mixed petition" is one "in which a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not." <u>Rhines v. Weber</u>, 544 U.S. 269, 271 (2005). A district court "may not adjudicate mixed petitions" because the "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." <u>Id.</u> at 273 (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 517–19 (1982)). This is known as the "total exhaustion" requirement. <u>See id.</u> at 274.

There are three avenues of relief the Court can take when resolving a mixed petition. First, the Court can dismiss the petition in its entirety, but this practice is disfavored as it could deprive a petitioner of the ability to pursue federal habeas review altogether. <u>See</u> <u>DeLong v. Dickhaut</u>, 715 F.3d 382, 386 (1st Cir. 2013); <u>see also</u> <u>Rhines</u>, 544 U.S. at 274–75 (explaining that AEDPA's one-year statute of limitations for state convictions is not tolled for the pendency of a the petition itself, so "[i]f a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it . . . after the limitations period has expired, this will likely mean the termination of any federal review."). Here, Respondent argues that "the appropriate remedy is dismissal of the entire petition[.]" [Dkt. No. 9 at 13]. However, this remedy would result in dismissal of Libby's Ground Three, which is plainly exhausted, and would run contrary to the First Circuit's directive

that petitioners be given the opportunity to dismiss their unexhausted claims.  Therefore, the undersigned recommends against dismissing Libby's habeas petition in its entirety.

The second avenue of relief is known as "stay-and-abeyance," approved by the Supreme Court in Rhines: "rather than dismiss the mixed petition . . . a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims."  544 U.S. at 275; see also DeLong, 715 F.3d at 387.  However, granting a "stay-and-abeyance" could "undermine Congress' design in AEDPA to encourage finality in criminal proceedings and to streamline the federal habeas process."  Josselyn v. Dennehy, 475 F.3d 1, 4 (1st Cir. 2007) (citing Rhines, 544 U.S. at 277).  The Supreme Court therefore noted that "stay and abeyance should be available only in limited circumstances."  Rhines, 544 U.S. at 277. The First Circuit succinctly described what elements would give rise to such "limited circumstances"—"to obtain a stay of a mixed petition, the petitioner must show that there was 'good cause' for failing to exhaust the state remedies, the claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics."  Josselyn, 475 F.3d at 4 (citing Rhines, 544 U.S. at 278).  Respondent addresses each of these prongs in his motion to dismiss.  First, Respondent contends that "petitioner completely omitted from his ALOFAR any federal nature of the claims he now asserts in Grounds One and Two" and that "[r]egardless of whether this omission was deliberate or the product of ineffective assistance of counsel, neither would amount to good cause."  [Dkt. No. 9 at 12–13].  The undersigned agrees.  The First Circuit has held that counsel's failure to present federal issues to the state courts does not suffice as "good cause" for purposes of stay-and-abeyance of a habeas petition.  See Josselyn, 475 F.3d at 5 (petitioner "argues good cause because his counsel allegedly believed that he had exhausted the . . . claims by presenting them to the Appeals Court.  But, such a belief, if sincerely held, would

have been unreasonable . . . . Ignorance of the law does not constitute good cause."). For the second prong, Respondent contends that "the claims do not appear to be 'potentially meritorious,' as the unexhausted claims involve matters of state evidence law." [Dkt. No. 9 at 13]. It is true that Libby's unexhausted Grounds One and Two involve evidentiary rulings, which pose an "immediate hurdle" for federal habeas review, Simpson, 372 F. Supp. 2d at 147, but, as noted above, evidentiary rulings can still result in infringements on federal constitutional rights. See Coningford, 640 F.3d at 484. The Court cannot conclude, therefore, that Libby's potential federal claims related to Grounds One and Two of his petition are plainly meritless. Lastly, Respondent argues for the third prong that "there has not been a showing that the petitioner avoided intentionally dilatory litigation tactics." [Dkt. No. 9 at 13]. This, however, flips the dynamic on its head—Libby is not required to show that he avoided dilatory practices. Rather, the Supreme Court requires only that there be "no indication that the petitioner engaged in intentionally dilatory litigation tactics[.]" Rhines, 544 U.S. at 278. Respondent has not alleged that Libby engaged in any such tactics and, based on the record, there is no indication that he has. All that said, the conclusion remains the same: because Libby has not shown good cause for failing to exhaust his federal claims before the state courts, this is not a "limited circumstance" in which issuing a stay-and-abeyance would be the proper remedy.

The third and final avenue for resolving a mixed petition is voluntary dismissal. Respondent argues that this would be a fitting alternative remedy should the Court decide against dismissing Libby's petition in its entirety. [Dkt. No. 9 at 13]. Though Libby did not specifically address mixed petitions in his opposition, he stated that he would willingly dismiss Ground Two of his petition and proceed only on Grounds One and Three. [Dkt. No. 10 at 2]. Following the First Circuit's directive that "the best practice is for the district court to give the petitioner an

opportunity to dismiss the unexhausted claims," and noting Libby's apparent understanding of the exhaustion requirement, Libby should be given the opportunity to voluntarily withdraw Grounds One and Two of his petition and proceed only on Ground Three.

## V.    DISCOVERY AND EVIDENTIARY HEARING

Libby asks that the Court grant him "Discovery, and an evidentiary hearing[.]"  [Dkt. No. 1 at 16].  Respondent objects to both requests in his motion to dismiss.  Against Libby's request for discovery, Respondent contends that Libby "is not entitled to discovery as a matter of ordinary course" and that "to the extent the petitioner is seeking discovery on either of the unexhausted claims, he is not entitled to such relief."  [Dkt. No. 9 at 9–10 (citations omitted)].  Against Libby's request for an evidentiary hearing, Respondent argues that this is left to the "sound discretion of the district courts," but that "[h]ere, exercising that discretion in favor of granting an evidentiary hearing would be inappropriate because the petitioner has failed to make the minimum showing necessary to warrant one."  [Id. at 11 (citations omitted)].  Libby's demands—for discovery and for an evidentiary hearing—is discussed in turn.

### A.    Libby's Request for Discovery Is Denied as He Has Not Satisfied the Requirements of Rule 6 of the Section 2254 Rules

The Supreme Court has held that a "habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  Bracy v. Gramley, 520 U.S. 899, 904 (1997); see also Donald v. Spencer, 656 F.3d 14, 15–16 (1st Cir. 2011).  Instead, discovery in habeas proceedings is governed by Rule 6 of the Section 2254 Rules, which states in Rule 6(a) that a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  To demonstrate "good cause," Libby "must present specific allegations that give a court reason to believe" that he may be entitled to relief "if the facts are fully developed[.]"  Donald, 656 F.3d at 16 (quoting Teti v.

Bender, 507 F.3d 50, 60 (1st Cir. 2007)); see also Bracy, 520 U.S. at 908–09.  Additionally, pursuant to Rule 6(b), the "party requesting discovery must provide reasons for the request" and "must also include any proposed interrogatories and requests for admission, and must specify any requested documents."

Libby's request for discovery fails to meet either part of Rule 6.  First, Libby has not demonstrated "good cause" to satisfy 6(a).  Indeed, Libby has not offered any rationale for how discovery would bolster his entitlement to relief.  Cf. Teti, 507 F.3d at 60 (upholding the district court's decision denying habeas petitioner's discovery request when "the documents submitted" by petitioner "did not suggest that discovery would help establish any claim for relief.").  Further, Libby failed to meet the requirements of 6(b) where "his request for discovery is generalized and does not indicate exactly what information he seeks to obtain." Id.  As the First Circuit has noted, "[a] habeas proceeding is not a fishing expedition." Id.  Libby's request for discovery is denied.

### B.   Libby's Request for an Evidentiary Hearing Is Denied Because his Claims were Adjudicated on the Merits

Prior to AEDPA, "the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts," and that "basic rule has not changed." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citations omitted).  However, that discretion is strictly curtailed by AEDPA.  Evidentiary hearings are governed by 28 U.S.C. § 2254(e)(2), which "imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing." Cullen v. Pinholster, 563 U.S. 170, 185 (2011).  This limitation is due to AEDPA's mandate in § 2254(d)(1) that habeas review "is limited to the record that was before the state court that adjudicated the claim on the merits." Id. at 181.  Evidentiary hearings, therefore, are available to petitioners only on "claims that were not adjudicated on the merits in state court." Id. at 186.  All of Libby's grounds for relief were adjudicated on the merits by the Appeals Court—Libby's

grievance is directed at the trial judge's substantive decisions admitting evidence and denying his motion to dismiss, all of which were affirmed by the Appeals Court. Thus, AEDPA, as interpreted by <u>Pinholster</u>, bars an evidentiary hearing on Libby's claims, and his request for that hearing must be denied. <u>See, e.g.</u>, <u>Sepulveda v. Roden</u>, No. 11-11491-JLT, 2014 WL 66704, at *11 (D. Mass. Jan. 7, 2014) (denying evidentiary hearing on habeas and noting that the issues were "fully briefed . . . both at the state trial level and the appellate levels," and so "although the state court did not conduct an evidentiary hearing, it adjudicated [petitioner's] claims on the merits.").

## VI.   SUMMARY AND RECOMMENDATIONS

Libby presents three Grounds for relief in his habeas petition. Grounds One and Two, based on challenges to the state court's rulings on evidentiary matters, could present cognizable issues of federal law if they "result[] in a fundamentally unfair trial" and therefore "violate due process[.]" <u>Coningford</u>, 640 F.3d at 484 (citations omitted). Libby did not present any fair trial or due process claims to the state courts, so Grounds One and Two were not exhausted and the Court cannot review them. <u>See</u> <u>Adelson</u>, 131 F.3d at 261. Ground Three presents a cognizable issue of federal law: violation of the Sixth Amendment's guarantee of a speedy trial. Libby also presented Ground Three to the state courts, rendering it exhausted. Lastly, Libby asked that the Court grant him discovery and an evidentiary hearing. But Libby has failed to demonstrate "good cause" for discovery pursuant to Rule 6, and his request for an evidentiary hearing is barred by 28 U.S.C. § 2254(e)(2).

The undersigned therefore RECOMMENDS that:

1.      Respondent's motion to dismiss be DENIED subject to the condition that Libby voluntarily withdraw Grounds One and Two of his petition within twenty-one (21) days of the District Judge's Order. Libby is to proceed only on Ground Three of his petition. If Libby declines

to voluntarily withdraw Grounds One and Two within the appropriate timeframe, the Court will "dismiss the entire petition without prejudice." Clements v. Maloney, 485 F.3d 158, 169 (1st Cir. 2007); see also Caisse v. Divris, 507 F. Supp. 3d 363, 366 (D. Mass. 2020) (utilizing voluntarily withdrawal to resolve mixed petition).

        2.      Libby's requests for discovery and evidentiary hearing be DENIED.

## VII.    REVIEW BY DISTRICT JUDGE.

The Parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), they are entitled to object to this Report and Recommendation by filing a specific written objection with the Clerk of this Court within fourteen (14) days of service of this Report and Recommendation.  Such written objections must specifically identify the portion of this Report and Recommendation to which objections are made and the basis for those objections.  The parties are further advised that the First Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review. See, e.g., M. v. Falmouth Sch. Dep't, 847 F.3d 19, 26 (1st Cir. 2017); see also Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988).

 

                        */s/ David H. Hennessy*
                        David H. Hennessy
                        United States Magistrate Judge