UNITED STATES DISTRICT COURT
DISTICT OF MASSACHUSETTS

| | |
|---|---|
| JEREMY LIBBY,<br>Petitioner,<br><br>v.<br><br>MATTHEW DIVRIS<br>Respondent. | )<br>)<br>)<br>)<br>)   Civil Action No. 4:21-CV-40013-MRG<br>)<br>)<br>)<br>) |

**ORDER ON AMENDED PETITION**
**FOR THE WRIT OF HABEAS CORPUS**

GUZMAN, J.

Before the Court is pro se Petitioner Jeremy Libby's ("Libby") Amended Petition for Writ of Habeas Corpus [ECF No. 19]. In this petition, Libby alleges that the Commonwealth of Massachusetts ("Commonwealth") violated his Sixth Amendment speedy trial rights by taking roughly four-and-a-half years to bring him to trial. Respondent Matthew Divris ("Divris") is the Superintendent at North Central Correctional Institution ("NCCI") where Libby is incarcerated. Libby asks this Court for discovery, an evidentiary hearing, and release from custody. For the following reasons, the petition is DENIED.

**I.      Background**

As this habeas petition is based on an alleged speedy trial violation, the Court will review key dates in the record with detail. Libby was indicted on July 31, 2012, on four counts of forcible rape of a minor and four counts of indecent assault and battery on a child under 14 in Hampden County Superior Court. [ECF No. 20-1 at 8[1]]; Commonwealth v. Libby, 32 N.E.3d. 890, 894

---

[1] All pincites refer to ECF pagination.

1

(Mass. 2015). At his August 22, 2012, arraignment, he was released on his personal recognizance with special conditions that he be monitored with a Global Positioning System (GPS) device, that he stays away from the Town of Palmer, the victim, and any minor under 16, and adhere to a 6:00 p.m. – 6:00 a.m. curfew. [ECF No. 20-1 at 9].

From November 2012 to November 2013, the Commonwealth and Libby filed several evidentiary motions. Among these motions was Libby's motion to suppress pre- and post-arrest interviews with law enforcement. [Id.]. The motion judge suppressed the interviews in their entirety and the Commonwealth filed an interlocutory appeal on December 2, 2013. [Id. at 10]. Trial court proceedings were stayed pending appeal. [Id.]. On February 10, 2014, Libby's GPS monitoring and curfew were stricken. [Id.]. Justice Lenk of the Massachusetts Supreme Judicial Court ("SJC") allowed the interlocutory appeal to proceed on March 19, 2014, and the case was docketed on October 6, 2014. [Id.]. Oral arguments were held on February 4, 2015, and the SJC reversed the finding on Libby's pre-arrest statements on June 15, 2015.[2] [Id.]. The rescript from the SJC entered on August 6, 2015. [Id.].

Following the interlocutory appeal, the jury trial was first scheduled on October 26, 2015. [Id.]. By the request of the parties, the court continued his first trial date. Several more hearings and trial dates were cancelled at the request of the parties. By the time Libby filed a Rule 36 motion[3] to dismiss for a speedy trial violation on July 18, 2016, his trial had been rescheduled six times. The judge denied his motion to dismiss on October 31, 2016, and his trial was rescheduled twice more to January 4, 2017. In total, his trial was rescheduled 9 times.

---

[2] Libby, 32 N.E.3d. 890.
[3] A Rule 36 motion is the procedural mechanism to assert one's speedy trial rights in Massachusetts.

At trial, the Commonwealth was granted a *nolle prosequi* on the four counts of indecent assault and battery, and the jury returned a verdict of guilty on all four remaining counts. [Id. at 13-14]. The trial judge sentenced Libby to 10-12 years imprisonment, on the first three counts, as well as ten years of probation with conditions on the fourth count. [Id. at 14-15]. He appealed his conviction alleging, among other things, that his speedy trial rights had been denied. [Id. at 38]. In his appeal, Libby filed his own speedy trial calculation, challenging for the first time the 182-day period between him filing his Rule 36 motion and his trial. [Id. at 84]. The Massachusetts Appeals Court ("MAC") affirmed his conviction on speedy trial grounds and determined that Libby had waived the 182-day period. Commonwealth v. Libby, No. 18-P-346, 2019 WL 7168804 (Mass. App. Ct. Dec. 24, 2019). He applied for and was denied Further Appellate Review by the SJC on May 18, 2020.[4] Libby then filed his first habeas petition in this Court on February 3, 2021. Magistrate Judge David Hennessy was referred the case and issued a Report and Recommendation that Libby's petition be denied in its original form because, while his speedy trial claim was exhausted, his other claims were not. [ECF No. 13]. This Court adopted Judge Hennessy's Report and Recommendation, [ECF No. 15], and Libby was given the opportunity to amend his petition to remove the unexhausted issues. Libby filed his amended petition on March 22, 2022. [ECF No. 19].

---

[4] Commonwealth v. Libby, 145 N.E.3d 889 (2020) (SJC appeal denied without published opinion). Where, as here, a state's highest appellate court denies an application for further review without comment, the federal court should "look through" that judgment to identify, and conduct Section 2254 review upon, the last reasoned state court decision. Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991). Here, the last reasoned state court decision is the Massachusetts Appeals Court's. Accordingly, that decision is subject to review. Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) ("Because the SJC summarily denied further appellate review, we look to the last reasoned state-court decision—in this case, the MAC's rescript.").

**II.     The Parties' Arguments**

Libby argues that his Sixth Amendment speedy trial right was denied to him because of the length between his arraignment and trial. In his petition, Libby discusses some of the factors enumerated in Barker v. Wingo, 407 U.S. 514, 530-33 (1972), which the Court uses to determine whether there has been a speedy trial violation. Libby particularly emphasizes that the length of delay and prejudice caused by the delay weigh in his favor, and disputes some of the MAC and motion judge's factual findings relating to reasons for the delay. Superintendent Divris, meanwhile, argues that the same Barker factors weigh against Libby. Additionally, Divris advances the argument that the period after Libby asserted his right is procedurally defaulted because the MAC rested on the state procedural ground of waiver. The Court will now discuss the legal standards at play.

**III.    Legal Standard**

*1. The Antiterrorism and Effective Death Penalty Act Standard ("AEDPA")*

Since April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") controls habeas review. This Act commands district courts to deny a habeas petition unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on . . . unreasonable [factual] determination[s]." 28 U.S.C. § 2254(d)(1)-(2). For a state court decision to be contrary to Federal law, "it either applies a test that is inconsistent with one announced by the [Supreme] Court or reaches the opposite conclusion on materially indistinguishable facts." Rashad v. Walsh, 300 F.3d 27, 34-35 (1st Cir. 2002). Meanwhile, a decision is unreasonable where "the state court identifi[ed] the correct governing legal principle . . . but unreasonably applie[d] that principle" when viewed objectively. Williams v. Taylor, 529 U.S. 362, 365 (2000). Mere error by the state court is not enough to sustain a petition.

4

McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). The state court decision must have "some increment of incorrectness beyond error" that is "great enough to make the decision unreasonable in the independent and objective judgment of the federal court" that is reviewing the habeas petition. Id. (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000). Indeed, "[t]he standard for evaluating the state court's decision is 'highly deferential,' with 'the presumption that state courts know and follow the law' and the requirement that the decisions of the state court 'be given the benefit of the doubt.'" Simpson v. Spencer, 372 F. Supp. 2d 140, 145 (D. Mass. 2005) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

In the same vein, factual determinations by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. Id.; see Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007). If the petitioner cannot clear this hurdle, then the state fact findings must be given credit by the habeas court. Rashad, 300 F.3d at 35.

*2. The Right to a Speedy Trial*

The first step for this Court is to determine what "clearly established Federal law" is at issue. Libby alleges that his Sixth Amendment speedy trial right was violated, as applied against the states under the Fourteenth Amendment's selective incorporation doctrine. See Klopfer v. North Carolina, 386 U.S. 213, 223 (1967) (incorporating the Sixth Amendment speedy trial right). The Supreme Court has delineated this right under the Barker balancing framework. United States v. Reyes, 24 F.4th 1, 28 (1st Cir. 2022) ("the seminal Supreme Court case interpreting [the Sixth Amendment speedy trial right] [is] Barker v. Wingo, [which] supplies a quadripartite balancing test") (internal quotations omitted). Courts are asked to examine (1) the length of delay; (2) the

5

reason for the delay; (3) whether the defendant asserted his right; and (4) prejudice to the defendant. Barker, 407 U.S. at 530.

### 3. Procedural Default

Superintendent Divris argues that Libby's claim is procedurally defaulted because the MAC determination that Libby waived the 182 days between his Rule 36 motion and his trial is an independent and adequate state procedural grounds. [ECF No. 36 at 8]. A petitioner's claim is procedurally defaulted when the state court decision fairly appears to rest on an independent and adequate state procedural ground. See Coleman v. Thompson, 501 U.S. 722, 733 (1991). In such a circumstance, procedural default can only be overcome if the "prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

## IV. Discussion

### A. Procedural Default of the 182 Days

The state court found that there were 1,423 days between Libby's arraignment and his motion to dismiss, and that no more than 294 days counted against the state speedy trial clock.[5] There were an additional 182 days between Libby's Rule 36 motion and the start of his trial.[6]

---

[5] Massachusetts Rule of Criminal Procedure 36 requires a case to go to trial within one year. Similar to the Federal Speedy Trial Act, this rule allows exclusion of time from the clock. However, the Sixth Amendment speedy trial right has no clock. Instead, having reason for the delay is a factor for courts to consider in balancing the right.

[6] The actual number of days between July 18, 2016, and January 4, 2017, is 171. It seems the number 182 comes from Libby's table of calculation that he filed with both the MAC and this Court. As the MAC rested on procedural grounds, 182 versus 171 days makes no difference. The Court will still refer to the time frame as 182 days.

Superintendent Divris argues that this Court should not consider these 182 days because of the doctrine of procedural default. [ECF No. 36 at 8]. Specifically, he argues that these days are defaulted because the MAC found that Libby waived this period, and that waiver is an independent and adequate state law grounds for purposes of procedural default. [Id. at 8-9]. "Federal habeas review is precluded if the state court reached its decision on an adequate and independent state-law ground." Torres v. Dubois, 174 F.3d 43, 46 (1st Cir. 1999). As Divris rightly points out, "the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts." Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010). Thus, the 182 days are procedurally defaulted.

The first approach by which Libby can overcome this default is to demonstrate both cause for the default and that there has been actual prejudice as a result of the federal law violation. See Shinn v. Ramirez, 596 U.S. 366, 371 (2022). The cause prong is satisfied if the petitioner can show that an objective external factor worked against their efforts to comply with the state procedural rule. Costa v. Hall, 673 F.3d 16, 25 (1st Cir. 2012) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). For the second prong, prejudice is found where "the errors . . . worked to [the petitioner's] *actual* and substantial disadvantage, infecting [their] entire trial with error of constitutional dimensions." Costa, 673 F.3d at 26 (internal quotation omitted) (emphasis in original). Libby fails to show either cause or prejudice.

First, Libby has not shown that any external factor caused him to waive his argument in front of the MAC. In his Appellant's brief, Libby raised these 182 days for the first time in a table with no legal basis or reasoned argument. Libby, 2019 WL 7168804, at *3n.5; [ECF No. 20-1 at 84]. There was nothing external that stopped him from presenting this argument properly in

7

conformance with the Massachusetts Appellate Procedure Rule 16. Nor does he show cause for failing to renew his Rule 36 motion before the state trial court. Renewing the motion would have preserved the 182 days on appeal. Moreover, Libby has not shown that the delay worked to his disadvantage. In fact, the evidence found by the MAC shows that the delay worked to his advantage as he was able to question the victim's credibility because of the delay. Libby, 2019 WL 7168804, at *3 ("if anything, the passage of time inured to his benefit, allowing him to challenge the victim's recollection and the Commonwealth's efforts to refresh it.").

The second approach to overcome procedural default is by showing a fundamental miscarriage of justice would occur. The Supreme Court has limited this standard to cover only imprisonment of an actually innocent person. See Coleman, 501 U.S. at 748. Libby challenged some of the evidentiary rulings of the lower state court in both the MAC and in his first habeas petition, but these claims were not properly exhausted and do not show actual innocence. As Libby has failed to assert cause and prejudice for his procedural default and has failed to show that habeas relief would correct a fundamental miscarriage of justice, the 182 days are procedurally defaulted, and this Court cannot examine them. However, this limited procedural default still allows the Court to review the period of delay before Libby filed his Rule 36 motion.

*B. The Speedy Trial Claim*

A federal court reviewing a habeas petition can only grant it if a state court decision was contrary to or involved an unreasonable application of federal law, or if there were unreasonable factual conclusions. 28 U.S.C. § 2254(d). Here, the federal law in question is the Sixth Amendment and its speedy trial right. The Supreme Court has determined that the proper analysis for a speedy trial claim is the Barker balancing test. When the MAC reviewed Libby's speedy trial claim, they relied on Commonwealth v. Wallace, which held that a defendant's right to a

speedy trial under the Massachusetts state constitution is analogous to their Sixth Amendment speedy trial right under the U.S. Constitution. 472 Mass. 56, 60 (2015). The Wallace court utilized the Barker factors in its analysis. Id. Thus, Wallace is the Massachusetts' courts application of Barker. As the MAC relied on Wallace in Libby's case, it used the proper Supreme Court precedent. The question now turns to whether the MAC unreasonably applied the Barker factors to Libby's case, or if the state court came to an unreasonable factual determination.

As stated above, when determining if a defendant's speedy trial rights have been violated, courts look to (1) the length of delay; (2) the reasons for delay; (3) the extent the defendant has asserted their speedy trial rights; and (4) any prejudice to the defendant. Barker, 407 U.S. at 530.

   1. *Length of the Delay*

The length of delay is a "double enquiry," where a court first looks to whether the delay is presumptively prejudicial so as to trigger judicial review, and, if it is, the court then considers the extent of the delay along with the other Barker factors. Doggett v. United States, 505 U.S. 647, 651-52 (1992). If the delay is not presumptively prejudicial, courts are not required to look into the other factors. Barker, 407 U.S. at 530.  No set line has been drawn but typically one year of delay is presumptively prejudicial. Id. at n.1. Here, Libby was indicted on July 31, 2012, and arraigned a month later, on August 22, 2012. His Rule 36 motion was then brought on July 18, 2016, and his trial started on January 4, 2017. As stated *supra*, this Court cannot view the 182 days between Libby's Rule 36 motion and the start of trial because of procedural default, so the relevant period is from August 22, 2012, to July 18, 2016. The state court found that there were 1,423 days, which is just under four years, between Libby's arraignment and his motion.[7] Roughly four years

---

[7] There were 23 days between Libby's indictment and arraignment, but they make little difference to the underlying analysis.

9

is well beyond the typical one-year window for presumptive prejudice; therefore, this delay was long enough to trigger inquiry into the other factors. In its opinion, the MAC never referred to this period as "preemptively prejudicial," but it did correctly move forward to analyze the other Barker factors. This first factor should weigh in Libby's favor because the length of the delay goes well beyond the bare minimum to trigger review.

2. *Reason for the Delay*

When inquiring into the reasons for delay, there is a sliding scale between bad faith delay and valid delay caused by due diligence. Rashad, 300 F.3d at 34. ("[D]eliberately dilatory tactics must be weighed more heavily against the state than periods of delay resulting from negligence. . . . [V]alid reasons . . . do[] not count against the state at all."). The MAC found the bulk of the delay was caused by the motion to suppress and its appeal, and unavailability of witnesses. Libby, 2019 WL 7168804, at *3. Additionally, the court found that Libby acquiesced to much of the delay. Id. Though Libby's motion to suppress, its appeal, and the unavailability of witnesses did cause substantial delay, they are entirely valid reasons for delay. See United States v. Loud Hawk, 474 U.S. 302, 315 (1986) (holding that interlocutory appeals are a valid reason for delay); United States v. Worthy, 772 F.3d 42, 46 (1st Cir. 2014) (holding acquiescence to delay against the defendant); Isaac v. Perrin, 659 F.2d 279, 282 (1st Cir. 1981) (finding unavailability of witnesses is a valid reason for delay). The Court presumes the state courts' findings to be correct. 28 U.S.C. § 2254(e)(1).

Libby challenges the motion judge and the MAC's findings on five different periods: (1) when the motion to suppress was under advisement; (2) the period between the ruling on the motion to suppress and the stay pending appeal; (3) the period between the rescript from the SJC and the continuance from the October 25, 2015 trial date; (4) the period where the case was in the

10

trial pool; and, (5) the period where witness Allison Jackobek was unavailable. [EFC No. 29 at 22-26]. These periods add up to 350 days. However, Libby fails to provide clear and convincing evidence that it was unreasonable to find these periods were valid. Libby's only point of evidence and argument is a chart where he performed his own calculation of excludable periods. However, this is the same chart that he argued in the MAC. Using the same evidence that was considered by the lower court is not clear and convincing evidence of unreasonableness. See Teti, 507 F.3d at 59 ("[Petitioner] tries to refute the MAC's factual determinations by employing the same documents already considered by the state courts. That approach fails."). Concluding, as the MAC did, that the delays between Libby's arraignment and his Rule 36 motion had valid reasons, the Court weighs this factor against Libby.

       3.   *Assertion of the Speedy Trial Right*

The speedy trial doctrine puts some onus on a criminal defendant to assert their rights. See Barker, 407 U.S. at 527; United States v. Perez-Cubertier, 958 F.3d 81, 91 (1st Cir. 2020) (A defendant has "some responsibility to assert his speedy trial claim."). Courts should look to the "timeliness and frequency" to which the defendant asserts the right. Barker, 407 U.S. at 527. The sooner and more often a petitioner asserts their speedy trial rights, the more this factor will weigh in their favor. Id. Failing to assert one's speedy trial right for the entire time between indictment and arrest may weigh against a defendant in their habeas petition. Perez-Cubertier, 958 F.3d at 91. However, when a defendant does assert their speedy trial right, it is strong evidence of a deprivation. Barker, 407 U.S. at 531-32.

The MAC in Libby's case did not address the assertion factor, only recognizing that Libby did assert his right by discussing his Rule 36 motion. As the MAC left this factor unresolved, this Court is free to analyze it de novo. See Horton v. Allen, 370 F.3d 75, 80 (1st Cir. 2004). Here,

11

Libby was indicted on July 31, 2012, and arraigned on August 22, 2012. He did not file his Rule 36 motion, until July 16, 2016. Though this assertion was before trial, it was after almost four years of delay. These facts are analogous to those in Perez-Cubertier, where the defendant failed to raise his speedy trial right over four-and-a-half years and, as a result, the First Circuit weighed the assertion factor against him. 958 F.3d at 91. Although Libby did raise his speedy trial right after the four years of delay, he did not do so with force and timeliness. He only raised his right once and after significant delay had already occurred. A speedy trial assertion typically is given strong weight, however, his failure to renew his motion and failure to do so earlier in the process lessen the amount this factor weighs towards Libby.

    4. *Prejudice*

The final factor for the Court to consider is prejudice towards the petitioner caused by the delay. This factor looks at the interests of the petitioner, and the Supreme Court has identified the following relevant interests: "(i) [] prevent[ion] [of] oppressive pretrial incarceration; (ii) [] minimiz[ation] of anxiety and concern of the accused; and (iii) [] limit[ing] the possibility that the defense will be impaired." Barker, 407 U.S. at 532. These interests are factual issues on which the state courts are given deference.

The MAC found no prejudice to Libby because of interests one and three. The MAC found that since Libby was never incarcerated pretrial the first interest can easily be resolved to find no prejudice. Libby, 2019 WL 7168804, at *3. As Libby concedes, he was at liberty pretrial, though with several conditions of release, for the length of his case. [ECF No. 29 at 20]. Regarding the third interest: whether the delay prejudiced Libby's defense, the MAC found that the delay actually benefitted his defense. Libby, 2019 WL 7168804, at *3. It allowed his attorney to challenge the victim's recollection of events, point out to the jury that the victim reviewed her four-and-a-half-

year-old police interview before testifying, and allowed Libby to suggest to the jury that she was not a credible witness. Id. These factual findings of the state court are entitled deference, and thus, Libby would need to rebut them by clear and convincing evidence. Though he claims that the MAC "utterly skirted around" the issue, he proposes no evidence to rebut the lack of prejudice to his defense. [ECF No. 29 at 20]. Regarding the second interest, the MAC made no explicit finding in reference to anxiety, grounding its ruling on interests one and three instead. In his petition, Libby argues that he suffered from three distinct forms of anxiety: the anxiety associated with the seriousness of the offense, the anxiety of GPS monitoring, and the anxiety from not being able to see his son pending trial. [ECF No. 29 at 20]. However, the First Circuit has noted that this factor is concerned with *minimizing* anxiety that is beyond the natural consequences of the indictment. See United States v. Colombo, 852 F.2d 19, 25 (1st Cir. 1988). Libby fails to show how these anxieties are beyond the natural consequences of the indictment. His GPS monitoring was removed two years into the case, and it is a natural consequence of an indictment alleging rape of a child that a defendant be barred from having contact with children.

Where, as here, the first and third interests are found against the petitioner, "[a] defendant must struggle to satisfy the prejudice prong after conviction." United States v. Carpenter, 781 F.3d 599, 614 (1st Cir. 2015). Libby fails to establish the anxiety he faced was outside the normal anxiety of similar defendants. Thus, this factor weighs against him as well.

    5. *Final Balancing*

Though the Supreme Court in Barker provided guidance to courts on how to conduct the balancing test, 407 U.S. at 530, the First Circuit has described the inquiry as "more judicial art than science." Look v. Amaral, 721 F.2d 4, 8 (1st Cir. 1984). When evaluating all of the factors above, the Court finds that the delay was presumptively prejudicial and Libby asserted his speedy

13

trial right, but those factors are outweighed by the delay having valid reasons, by Libby's failing to assert his right repeatedly and in a timely manner, and by his failure to show prejudice. The MAC made similar conclusions while applying the same standard.

**V.      Conclusion**

The MAC's decision was a reasonable application of Supreme Court precedent from <u>Barker v. Wingo</u>, 407 U.S. 514. Moreover, Libby failed to put forth clear and convincing evidence to rebut the presumption of correctness that attaches to the factual conclusions of the state courts. For the reasons stated above, Libby's <u>Amended Petition for Writ of Habeas Corpus</u> [ECF No. 19] is DENIED.[8]

SO ORDERED.

Dated: March 20, 2024

/s/ Margaret R. Guzman<br>
Margaret R. Guzman<br>
United States District Judge

---

[8] In the order denying Libby's original habeas petition, this Court also denied the Libby's request for discovery, as he had not satisfied the requirements of Rule 6 of the Section 2254 Rules, and denied his request for an evidentiary hearing because his remaining, exhausted claim was adjudicated on the merits. [ECF No. 13 at 28-30]. The Court now DENIES Libby's renewed requests for discovery and an evidentiary hearing in the amended petition for the same reasons.